# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### STATE COURT CASE NO.: 2016-031866-CA-01

CAPTEN TRADING LTD.,

        Plaintiff,

v.

BANCO SANTANDER INTERNATIONAL,

        Defendant.

_____/

## DEFENDANT BANCO SANTANDER INTERNATIONAL'S NOTICE OF REMOVAL

PLEASE TAKE NOTICE THAT, pursuant to 12 U.S.C. § 632, 28 U.S.C. § 1441, and § 1446, Defendant Banco Santander International ("BSI") removes to this Court the state court action entitled *Capten Trading Ltd. v. Banco Santander International*, Case No. 2016-031866-CA-01, filed in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida ("State Action"), and states:

## I.    INTRODUCTION

Plaintiff Capten Trading Ltd. ("Capten" or "Plaintiff"), filed an action in Florida state court against BSI, arising out of transactions involving international or foreign financial operations or banking.  BSI is an Edge Act corporation organized under section 25A of the Federal Reserve Act, and Plaintiff's causes of action relate to international banking transactions. 12 U.S.C. §§ 611-633.  Therefore, removal of the action to this Court is appropriate pursuant to 12 U.S.C. § 632.

## II.        REMOVAL PURSUANT TO THE EDGE ACT, 12 U.S.C. § 632

This case is removable pursuant to the Edge Act, 12 U.S.C. § 632.  The Edge Act grants federal district courts original jurisdiction over actions arising out of transactions involving international or foreign banking or financial operations, when one of parties is a corporation organized under the laws of the United States.  *Hernandez Perez v. Citibank, N.A.*, 328 F. Supp. 2d 1374, 1377 (S.D. Fla. 2004) ("As noted earlier, the Edge Act also creates federal subject-matter jurisdiction where a corporation organized under United States law is a party to this action.").  The Edge Act provides in pertinent part:

> Notwithstanding any other provision of law, **all suits of a civil nature** at common law or in equity **to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking**, or banking in a dependency or insular possession of the United States, **or out of other international or foreign financial operations**, either directly or through the agency, ownership, or control of branches or local institutions in dependencies or insular possessions of the United States or in foreign countries, **shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have <u>original</u> jurisdiction of all such suits**; and **any defendant in any such suit may, at any time before the trial thereof, remove such suits from a State court into the district court of the United States for the proper district by following the procedure for the removal of causes otherwise provided by law**. Such removal shall not cause undue delay in the trial of such case and a case so removed shall have a place on the calendar of the United States court to which it is removed relative to that which it held on the State court from which it was removed.

12 U.S.C. § 632 (2012) (emphasis added).

### A.        <u>The Allegations in Plaintiff's Complaint</u>

In order to determine if an action arises out of international or foreign banking or foreign financial operations and meets the requirements for removal pursuant to the Edge Act, courts look at the allegations in the complaint.  *See First Nat'l Bank of Joliet v. Promatek Med. Sys., Inc.*, 870 F. Supp. 234, 237 (N.D. Ill. 1994) ("In order to determine whether this action arises out

**GUNSTER**
**PROFESSIONAL ASSOCIATION**
**ATTORNEYS AT LAW**

of a transaction involving international or foreign banking, we must examine the allegations of the complaint."); *see also Dexia SA/NV v. Bear, Stearns & Co.*, 924 F. Supp. 2d 555, 558 (S.D.N.Y. 2013) ("[T]he Court finds the allegations in the Amended Complaint sufficiently arise out of international banking transactions to support federal jurisdiction under the Edge Act, making defendants' removal appropriate.").

In the Complaint, Plaintiff sues BSI in connection with four wire transfers[1] and associated financial operations involving at least two countries, stemming from the alleged mishandling by BSI of two wire transfers that were sent to the incorrect beneficiaries, and for two other wire transfers that allegedly were unauthorized by Plaintiff and sent to third parties, all of which resulted in an alleged theft of funds from Plaintiff's bank account by online hackers who apparently accessed Plaintiff's agent's, Roberto Bienenwald, account and sent the wires without his knowledge or consent. *See* Plaintiff's Complaint, attached as Exhibit A, ¶¶ 5, 7-23. Specifically, Plaintiff's Complaint alleges the following (BSI does not admit *any* of the allegations in the Complaint and makes reference to the allegations solely for purposes of removal):

1.      The Complaint alleges that BSI "is an **international banking** association and foreign corporation that conducts and engages in **banking business** at multiple locations in Miami-Dade County, Florida **and elsewhere** . . . ." Compl. ¶ 3 (emphasis added).

2.      The Complaint alleges that in 2013, Mr. Bienenwald, an Argentinean citizen, as Chief Executive Officer (and agent) of Plaintiff, a foreign corporation incorporated in the British Virgin Islands with an address in Panama, and doing business in Miami-Dade County, Florida,

---

[1]  While the Complaint discusses six unauthorized wire transfers (Compl. ¶¶ 15-21), two of those transfers, directed to entities in Hong Kong, were returned because the beneficiary account was closed (Compl. ¶¶ 19-20), and Plaintiff's monies were "returned."

**GUNSTER**
**PROFESSIONAL ASSOCIATION**
**ATTORNEYS AT LAW**

opened several sub accounts with BSI.  Compl. ¶¶ 2, 5, 37; *see also* Bank Account Agreement, attached as Exhibit B, p. 2.[2]

3.      The Complaint alleges that when opening the BSI accounts under Plaintiff's name, Mr. Bienenwald explained to his banker at BSI that he intended to use the BSI sub accounts to invest in real estate in South Florida.  Compl. ¶¶ 5, 7, 9, 39.  The Complaint further alleges that such real estate dealings handled abroad required "**international financial transactions . . . all conducted via wire transfers.**"  Compl. ¶ 7 (emphasis added).

4.      According to the Complaint, at the time Mr. Bienenwald opened the BSI accounts, he was given a specific pin number or code sheet, which was apparently common to all BSI bank customers, to use when sending a wire from Plaintiff's account to a third party.  Compl. ¶ 8.

5.      Specifically, the Complaint alleges that the BSI bank official dealing with Mr. Bienenwald knew that Mr. Bienenwald, on behalf of Plaintiff, was purchasing three condominium units at Paraiso Bayview in Miami-Dade County, Florida, and in February 2015, Mr. Bienenwald purchased those three condominium units.  Compl. ¶¶ 9-10.

---

[2]  In the state court action, Plaintiff failed to attach the controlling Bank Account Agreement to the Complaint, even though one of its claims (Count I) is for breach of that very contract. Therefore, and because the Bank Account Agreement is central to Plaintiff's case, it is appropriate for BSI to attach it to this Notice of Removal, and the Court may consider it for all purposes, including for establishing Plaintiff's country of incorporation and residence.  *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (a court may consider a document attached to a motion to dismiss as part of the pleadings if the document is central to the plaintiff's claim and its authenticity is undisputed); *Jackson v. BellSouth Telecomms., Inc.*, 181 F. Supp. 2d 1345, 1353-54 (S.D. Fla. 2001) (explaining that the court may consider certain documents referred to in plaintiff's complaint, which are central to plaintiff's claim, but are attached to defendant's motion to dismiss, as part of the pleadings).

**GUNSTER**
**PROFESSIONAL ASSOCIATION**
**ATTORNEYS AT LAW**

6.      According to the Complaint, Mr. Bienenwald paid three deposits, one for each condominium unit he purchased, and such payments were made via wire transfer to South Florida Property Escrow ("SFPE") without incident.  Compl. ¶¶ 11-12.

7.      The Complaint also alleges that when an additional deposit was due on each of the condominium units in July 2015, wire instructions were sent via facsimile for one of the wire transactions, which was received by SFPE.  Compl. ¶¶ 13-14.  But, according to the Complaint, the other two wire transfers were not properly handled by BSI because the funds were wired to two unauthorized beneficiaries, M.SAMP Enterprises and TTYG Investments.  Compl. ¶¶ 15-16.

8.      The Complaint alleges that on September 3, 2015, two additional unauthorized payments were made via wire transfer from Plaintiff's account to third parties, Mackymola Inc. and AZZ Auto Center, Inc., with references to Paraiso Bayview Contracts.  Compl. ¶¶ 17-18.

9.      The Complaint further alleges that on September 10, 2015, two more unauthorized payments were made via wire transfer from Plaintiff's account to a beneficiary named Green Ventures in Hong Kong.  Compl. ¶¶ 19-20.  According to the Complaint, however, these funds were ultimately returned to Plaintiff's account because the Green Ventures account was closed.  Compl. ¶¶ 19-20.

10.     The Complaint alleges that a BSI bank officer called Mr. Bienenwald to ask whether he authorized the two wire transfers to Green Ventures in Hong Kong.  Compl. ¶ 20. According to the Complaint, Mr. Bienenwald told BSI that he never sent wires to Hong Kong. *Id.*

11.     The Complaint also alleges that on October 2, 2015, BSI credited Plaintiff's account and explained that the account was credited because BSI recovered some of the money from the unauthorized, third-party beneficiary banks.  Compl. ¶ 21.

**GUNSTER**
PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

12.     The Complaint alleges that due to BSI's negligence and breach of fiduciary duties (and BSI bank officials' fraud) to Plaintiff, a total of $190,000.00 was transferred from Plaintiff's account without its knowledge, consent, or authorization.  Compl. ¶¶ 22-23.

13.     The Complaint alleges that BSI was required to safeguard its bank customer's deposits and to implement and follow policies and measures to ensure deposit monies and funds transferred by wire or otherwise from Plaintiff's account were authorized by Plaintiff.  Compl. ¶ 30.  The Complaint further alleges, however, that BSI failed to safeguard Plaintiff's funds by failing to detect fraudulent wire transfers from Plaintiff's account.  Compl. ¶ 31.

14.     The Complaint alleges that BSI owed a duty of reasonable care to Plaintiff to protect Plaintiff's funds from unreasonable risk and unlawful activity that might allow a third-party hacker to unlawfully remove funds from Plaintiff's account.  Compl. ¶¶ 34-35.  According to the Complaint, BSI breached this duty by not having adequate security measures in place to prevent a third-party hacker from accessing Plaintiff's account to facilitate an unauthorized wire transfer from Plaintiff's account.  Compl. ¶ 35.

15.     The Complaint also alleges that BSI and Plaintiff, through Mr. Bienenwald, had a fiduciary relationship because: Mr. Bienenwald, as an Argentinean citizen and consistent with Latin American culture, sought input or counsel from BSI, through its bank officers, as a fiduciary and not merely as a bank; Mr. Bienenwald told BSI, through its bank officers, that he was relying on BSI to support his investment efforts in the South Florida real estate market; BSI agreed to assist and counsel Mr. Bienenwald; BSI's banking officer told Mr. Bienenwald that Plaintiff could rely on BSI to protect his and Plaintiff's interests.  Compl. ¶¶ 37-40.  According to the Complaint, BSI breached this fiduciary duty by failing to adequately protect Plaintiff's

**GUNSTER**
PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

funds and account against a third-party hacker who transferred funds from Plaintiff's account via unauthorized wire transfers.  Compl. ¶ 42.

16.     Based on the foregoing allegations, Plaintiff is suing BSI for: (a) breach of contract (Count I), for BSI's alleged failure to safeguard Plaintiff's funds and account, and alleged failure to detect fraudulent wire transfers, which resulted in a purported theft of funds from Plaintiff's account and lost opportunities to invest said funds (Compl. ¶¶ 29-33); (b) negligence (Count II), stemming from BSI's alleged failure to exercise reasonable care to prevent a third-party hacker from accessing Plaintiff's account and transferring funds from Plaintiff's account via unauthorized wire transfers, which resulted in a purported theft of funds from Plaintiff's account and lost opportunities to invest said funds (Compl. ¶¶ 34-36); and (c) breach of fiduciary duty (Count III), for BSI's alleged breach of fiduciary owed to Plaintiff by failing to adequately protect Plaintiff's account from a third-party hacker who accessed Plaintiff's account, and without Plaintiff's consent or knowledge, transferred funds from Plaintiff's account via wire transfers, which resulted in a purported theft of funds from Plaintiff's account and lost opportunities to invest said funds (Compl. ¶¶ 37-43).

### B.     Elements of a Removal Pursuant to the Edge Act

"Jurisdiction lies under the Edge Act if (a) the action is civil; (b) one of the parties is a federally chartered corporation; and (c) the suit arises out of either *international banking or financial operations.*"  *Warter v. Boston Secs., S.A.*, No. 03-81026-CIV/RYSKAMP, 2004 WL 691787, at *5 (S.D. Fla. Mar. 22, 2004); *see also Pinto v. Bank One Corp.*, No. 02 Civ. 8477 NRB, 2003 WL 21297300, at *2 (S.D.N.Y. June 4, 2003); *Promatek Med. Sys.*, 870 F. Supp. at 237; *Bank of N.Y. v. Bank of Am.*, 861 F. Supp. 225, 232 (S.D.N.Y. 1994) ("[I]n order for [the Edge Act] to apply (1) one of the parties to a suit must be a federally chartered corporation, and

**GUNSTER**
**PROFESSIONAL ASSOCIATION**
**ATTORNEYS AT LAW**

(2) the suit must arise out of a transaction involving international or foreign banking or financial operations.").  The State Action meets all three requirements for removal under the Edge Act.

### (1)  The State Action is a Civil Action

First, the State Action seeks money damages and is civil in nature.  *See, e.g.*, Compl. ¶ 1.

### (2)  BSI is a Bank Organized Under the Laws of the United States

Second, while the Complaint generally alleges that BSI is an "international banking association and foreign corporation that conducts and engages in banking business at multiple locations in Miami-Dade County, Florida and elsewhere" (Comp. ¶ 3), more specifically, BSI operates in the United States as an Edge Act corporation organized under Section 25A of the Federal Reserve Act (12 U.S.C. §§ 611-633).

### (3)  The State Action Arises Out of Transactions Involving International or Foreign Banking and International or Foreign Financial Operations

Third, the State Action arises out of transactions involving international or foreign banking, and international or foreign financial operations.

"[A] suit satisfies the jurisdictional requisites of Section 632 if any part of it arises out of transactions involving international or foreign banking." *See Warter*, 2004 WL 691787, at \*5 (quoting *In re Lloyd's Am. Trust Fund Litig.*, 928 F. Supp. 333, 338 (S.D.N.Y. 1996)).  "Courts have held that wire transfers, maintaining deposits for customers, and providing investment advice are banking activities."  *Id.* at \*6 (holding that Edge Act jurisdiction existed because the facts underlying Plaintiffs' claims, wire transfers, managing deposits, and providing investment advice, constitute banking activities); *see also Nacional Financiera v. Chase Manhattan Bank, N.A.*, No. 00 CIV 1571 JSM, 2001 WL 327159, at \*1, \*4 (S.D.N.Y. Apr. 4, 2001) (bank's alleged wrongful retention of miswired funds to set off another debt owed to it was a traditional

**GUNSTER**
**PROFESSIONAL ASSOCIATION**
**ATTORNEYS AT LAW**

banking activity for purposes of Section 632); *In re Lloyd's*, 928 F. Supp. at 339 (holding that a dispute in which a bank, *inter alia*, maintained accounts, kept account records, executed orders to transfer funds to and from accounts and invested funds held in the accounts constituted traditional banking activities).

Here, there is no question that the State Action involves international or foreign banking. The Complaint alleges, among other things, that: (i) Mr. Bienenwald is an Argentinean citizen with "very little business experience in the United States" (Compl. ¶ 37); (ii) Mr. Bienenwald, on behalf of Plaintiff, a foreign corporation, opened sub accounts at BSI under Plaintiff's name (Compl. ¶ 5); (iii) Plaintiff is a company incorporated in the British Virgin Islands with a Panamanian address (Ex. B, p. 2); (iv) the nature of Plaintiff's business dealings required "international financial transactions . . . all conducted via wire transfers" (Compl. ¶ 7); (v) at the time of opening the account, Mr. Bienenwald was given a specific pin number or code sheet for facilitating wire transfers (Compl. ¶ 8); (vi) BSI assisted and counseled Mr. Bienenwald regarding his real estate investment efforts (Compl. ¶ 39); (vii) six wire transfers, transferring funds from Plaintiff's account to various third parties, were improper and unauthorized and resulted in the theft of those funds from Plaintiff's account (Compl. ¶¶ 11-23); and (viii) one of the aforementioned unauthorized wire transfers was sent to Hong Kong (Compl. ¶ 20). According to the Complaint, the monies were allegedly transferred from Plaintiff's account, through Mr. Bienenwald, presumably in Argentina or Panama, to various third parties, one of which was located in Hong Kong.  The State Action involves allegations regarding the opening of international bank accounts, the management of those accounts, wire transfers from those accounts, and the supervision of said accounts and transactions within same.   Under the authorities cited above, the allegations in the Complaint involve traditional banking activities and

**GUNSTER**
**PROFESSIONAL ASSOCIATION**
**ATTORNEYS AT LAW**

international or foreign banking.  *See also CI Int'l Fuels, Ltda. v. Helm Bank, S.A.*, 707 F. Supp. 2d 1351, 1354-55 (S.D. Fla. 2010) (denying motion to remand action by Colombian and Panamanian entities brought against removing bank, for claims arising from bank's alleged transfer of plaintiffs' monies out of their respective accounts purportedly without authorization).

Further, a suit satisfies the "international or foreign" requisites of Section 632 if it involves foreign parties, or transactions occurring abroad.  *See In re Lloyd's*, 928 F. Supp. at 338 (suit involving London-based market for insurance, underwriters from all over the world, and U.S. bank, was international in nature); *see also Pinto*, 2003 WL 21297300, at *3 (transaction was foreign because some of the transactions involved a foreign bank).  Here, the parties to the State Action are Capten, a foreign company incorporated in the British Virgin Islands with a Panamanian address, acting through an Argentinean citizen, and a U.S. Edge Act bank.  Compl. ¶¶ 2, 37.  Further, the State Action involves Plaintiff's real estate business dealings, which require "international financial transactions" all conducted by wire transfers.  Compl. ¶ 7.

Additionally, the fact that the Complaint "sounds [at least in part] in tort is no basis for discontinuing the centrality of banking activity to this action."  *See Warter*, 2004 WL 691787, at *7 (citing *Conjugal Soc'y Composed of Juvenal Rosa v. Chicago Title Ins. Co.*, 690 F. 2d 1, 4-5 (1st Cir. 1982) "(Edge Act jurisdiction exists in action in which Plaintiffs were allegedly fraudulently induced to refinance a mortgage even though the complaint sounded in negligence and conspiracy because the refinancing was a banking activity).");  *see also Pinto*, 2003 WL 21297300, at *4 ("[T]he presence of state law issues does not divest federal courts of Edge Act jurisdiction so long as the foreign banking transactions are involved.").  Nor do the causes of action sounding in contract alter the result.  *See ABA Int'l v. Citicorp USA*, No. CIV. A. No. H-

**GUNSTER**
**PROFESSIONAL ASSOCIATION**
**ATTORNEYS AT LAW**

87-2038, 1988 WL 30637, at *1 (S.D. Tex. Mar. 25, 1988) (finding federal jurisdiction under §
632 where the complaint alleged state law tort and contract claims).

Even assuming *arguendo* that the State Action did not involve international banking
activities – and it does without question – removal to this Court remains appropriate because the
State Action involves international financial operations.  *See Warter*, 2004 WL 691787, at *8.
The State Action, which seeks to recover damages as a result of BSI's alleged failure to
safeguard against the theft of Plaintiffs' funds held at BSI falls squarely within a district court's
Edge Act jurisdiction as involving "financial operations."  *See Stamm v. Barclays Bank of N.Y.*,
No. 96 Civ. 5158 (SAS), 1996 WL 614087, at *2 (S.D.N.Y. Oct. 24, 1996) (describing "financial
operations" as a "general statutory category"); *In re Lloyd's*, 928 F. Supp. at 341 (finding that
"[e]ven if the transactions in question here do not constitute banking proper . . . they surely fall
within the ambit of the 'financial operations' contemplated by the statute").  Financial operations
cover a broad range of transactions, and certainly include maintaining deposits and account
records, and processing wire transfers through a United States bank for deposit in or withdrawal
from a foreign account.  For example, the court in *In re Lloyd's* reasoned that Citibank's
activities – specifically, maintaining deposits in accounts; keeping records for those accounts;
executing orders to transfer funds from those accounts – even if not considered banking
transactions (which the *Lloyd's* court held they were, *see supra*), constituted "financial
operations."  928 F. Supp. at 339, 341.

C.      **The Removal is Timely**

This Notice of Removal is timely filed under 12 U.S.C. § 632, which permits removal by
any defendant at any time before trial.  *See* 12 U.S.C. § 632 ("[A]ny defendant in any such suit
may, at any time before the trial thereof, remove such suits from a State court into the district

11

**GUNSTER**
**PROFESSIONAL ASSOCIATION**
**ATTORNEYS AT LAW**

court of the United States for the proper district by following the procedure for the removal of causes otherwise provided by law."); *see also Magel v. Fed. Reserve Bank of Phila.*, 776 F. Supp. 200, 202 (E.D. Pa. 1991) (Section 632 allows removal at any time before trial).  The State Action was filed on December 14, 2016, and there has been no action on the merits.  Indeed, pursuant to an extension of time granted by Plaintiff's counsel, the time for BSI to respond to the Complaint has not even passed.

Additionally, and although not required to comply with the thirty-day removal requirement of 28 U.S.C. §1446(b),[3] this Notice of Removal is also timely filed under 28 U.S.C. §1446(b).  Assuming it applied, 28 U.S.C. §1446 requires that a notice of removal be filed within 30 days of service of process.  *See*  28 U.S.C. § 1446(b) ("The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . ..").  Plaintiff served BSI on December 23, 2016.  *See* Exhibit C.  This Notice of Removal is filed within 30 days of December 23, 2016.

### D.    The Removal is Appropriate

BSI as the *only* named defendant, has the right to remove this action under 12 U.S.C. § 632.  *See* 12 U.S.C. § 632 (allowing any defendant to remove).  Further, pursuant to 28 U.S.C. §

---

[3]  *See Hill v. Citicorp*, 804 F. Supp. 514, 515-16 (S.D.N.Y. 1992) ("[T]he time limit set forth in section 632 'before the trial,' would be rendered almost meaningless if the thirty-day limit from section 1446 were incorporated."); *see also CI Int'l Fuels*, 707 F. Supp. 2d at 1354-55 ("[T]he rule of unanimity, which is part of the removal procedure of 28 U.S.C. § 1446(a) . . . is not part, at least with regard to section 632, of 'the procedure for the removal of causes otherwise provided by law.' That is because section 632 *itself* resolves the question of who can effect removal.  And where a special removal statute provides a specific procedure, that procedure, not the procedure for removal of 28 U.S.C. § 1446, controls." (citations omitted)).

**GUNSTER**
**PROFESSIONAL ASSOCIATION**
**ATTORNEYS AT LAW**

1446(a), attached to this Notice of Removal as Composite Exhibit D are the entire contents of the State Action, consisting of: a copy of the docket, Civil Cover Sheet, Complaint, and Return of Service.  Moreover, pursuant to 28 U.S.C. § 1446(d), BSI will file a copy of this Notice of Removal with the circuit court in the State Action (the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida), and is giving written notice thereof to all parties that have appeared in the State Action.

III.    CONCLUSION

For all the foregoing reasons, Defendant BANCO SANTANDER INTERNATIONAL seeks to remove the action entitled *Capten Trading Ltd. v. Banco Santander International*, Case No. 2016-031866-CA-10, filed in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, to this Court.

Respectfully submitted,

**GUNSTER**
*Attorneys for Defendant*
*Banco Santander International*
600 Brickell Avenue
Suite 3500
Miami, Florida 33131
Telephone: (305) 376-6000
Facsimile:  (305) 376-6010

By: */s/ Clinton R. Losego*
Clinton R. Losego
FBN: 818054
closego@gunster.com
Stephanie L. Turk
FBN: 99138
sturk@gunster.com

**GUNSTER**
**PROFESSIONAL ASSOCIATION**
**ATTORNEYS AT LAW**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on Richard J. Diaz, Esq., Richard J. Diaz, P.A., Attorney for Plaintiff, 3127 Ponce de Leon Boulevard, Coral Gables, Florida 33134 on this 21st day of January, 2017, via e-mail to rick@rjdpa.com and via U.S. Mail.

By: <u>*/s/ Stephanie L. Turk*</u>
       Stephanie L. Turk

MIA_ACTIVE 4558241.3

14
**GUNSTER**
**PROFESSIONAL ASSOCIATION**
**ATTORNEYS AT LAW**